

DA 08-0272

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 422

IN RE THE MARRIAGE OF
JACQUELINE M. DAVID,

        Petitioner and Appellee,

  and

WILLIS W. DAVID, JR.,

        Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. CDR-2005-141
                  Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                James P. Reynolds, Reynolds, Motl and Sherwood, P.L.L.P.,
                Helena, Montana

        For Appellee:

                Mark P. Yeshe, Attorney at Law, Helena, Montana

                          Submitted on Briefs:  April 8, 2009

                                    Decided:  December 9, 2009

Filed:

                _____
                            Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     The First Judicial District Court, Lewis and Clark County, dissolved the parties' marriage; established a parenting plan and ordered Willis W. David, Jr., to pay child support for their minor child; and divided the marital estate. Willis appeals. We affirm.

¶2     The issues are:

¶3     1. Did the District Court abuse its discretion by applying the time rule formula to divide Willis's pension?

¶4     2. Did the District Court abuse its discretion by not directing Jacqueline M. David (Jackie) to reimburse Willis for the cost of the survivor benefit plan?

¶5     3. Did the District Court abuse its discretion by its distribution of the marital estate?

## BACKGROUND

¶6     The parties were married in Wisconsin in 1983 and moved to Montana soon thereafter. Two children were born to the marriage, one of whom had attained the age of 18 when the marriage was dissolved in 2008.

¶7     At the time of the dissolution hearings, Jackie, a 44-year-old high school graduate, was self-employed as a contract rural mail carrier. Her contract paid her $41,318 per year, of which she netted $24,797 in 2005. She had been the primary caregiver for the children. At the time of the hearings, 46-year-old Willis had been employed by the Montana National Guard for 20 years. He was both on active duty and a member of the Guard's reserve component, with a base salary of $52,549 per year. In addition, he

2

received $1,012 each month as a basic housing allowance and $187.49 as a basic subsistence allowance, both of which are non-taxable income.

¶8 The District Court dissolved the parties' marriage, adopted a parenting plan for their younger child, and ordered Willis to pay Jackie $569 per month as child support, plus $5,358 in arrearages, and to continue to maintain health and dental insurance for the younger child. The court also divided the parties' personal property. It ordered the proceeds of the sale of the family home split between the parties after payment of credit card debt, and ordered Willis to pay Jackie $3,045 for her share of a half-acre of property that he retained. The court also awarded Jackie a portion of Willis's anticipated retirement benefits. Willis appeals.

## STANDARD OF REVIEW

¶9 We review a district court's division of marital property to determine whether the trial court's findings are clearly erroneous. If the court's findings are not clearly erroneous, we will affirm the distribution of property unless the court abused its discretion. The test for an abuse of discretion in a marriage dissolution proceeding is whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Pospisil,* 2000 MT 132, ¶ 19, 299 Mont. 527, 1 P.3d 364.

## DISCUSSION

¶10 *Issue 1. Did the District Court abuse its discretion by applying the time rule formula to divide Willis's pension?*

3

¶11 It is well-established that retirement benefits are part of a marital estate. *Rolfe v. Rolfe*, 234 Mont. 294, 296, 766 P.2d 223, 225 (1988). In *Rolfe*, we adopted what is known as the time rule formula for dividing retirement benefit payments between parties to a dissolution of marriage. This formula is used in situations in which the spouse entitled to a retirement benefit has not yet ended employment, so that the retirement benefit is not yet being received. Under the formula, the non-employee spouse's share of the retirement benefit is computed by dividing the employee spouse's years of service during the marriage by the employee spouse's total years of service, and then multiplying the result by one half of the employee spouse's monthly after-tax retirement benefits. *Rolfe*, 234 Mont. at 298, 766 P.2d at 226. In the present case, the District Court's decree of dissolution provides that the time rule formula will be used to determine Jackie's share of Willis's retirement benefits when he retires from the National Guard.

¶12 Willis contends the court instead should have used a format recommended by the Defense Finance and Accounting Service (DFAS), the federal agency charged with paying out military pensions to retirees and, in the case of divorce, their ex-spouses. Under that format, an award to an ex-spouse of a person who is still on active duty at the time of the divorce will not provide the ex-spouse the benefit of any of the military member's post-divorce promotions or pay increases after the divorce; an award to Jackie of a share of Willis's retirement income would be calculated using a hypothetical retirement date of the date the marriage was dissolved. Willis presented, as an exhibit at trial, a publication setting forth the DFAS recommendations. He maintains the District

4

Court abused its discretion in failing to use the DFAS-recommended method to calculate Jackie's share of his retirement.

¶13   Willis points out that many states have adopted the principle, reflected in the DFAS recommendations but not in the time rule formula, that an ex-spouse should not benefit from a service member's post-divorce promotions or pay increases. *See e.g. Grier v. Grier*, 731 S.W.2d 931 (Tex. 1987). However, Jackie points out that other states have considered but not adopted the DFAS recommendations, having ultimately determined it more fair to use the time rule formula. *See In re Marriage of Hunt*, 909 P.2d 525 (Colo. 1995).

¶14   The time rule formula employed by the District Court in dividing Willis's future retirement benefits has been approved by this Court and used in Montana since 1988. Willis has failed to convince us that the District Court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice when it used that formula to determine the manner in which Willis's retirement benefits will be divided. We hold that the District Court did not abuse its discretion by applying the time rule formula to divide Willis's pension.

¶15   ***Issue 2. Did the District Court abuse its discretion by not directing Jackie to reimburse Willis for the cost of the survivor benefit plan?***

¶16   Survivor Benefit Plan (SBP) coverage allows a non-service member former spouse of a service member to receive a portion of the service member's retirement after the death of the service member. *See* 10 U.S.C. § 1448(b). The District Court's decree of dissolution states Willis has elected SBP coverage for Jackie through his employer, and

5

orders that he shall not change that election and shall continue to participate in SBP and to designate Jackie as his beneficiary. Willis contends the parties agreed, at the dissolution hearing, that Jackie would reimburse Willis for SBP premiums. That provision does not appear in the dissolution decree, and Willis argues its omission represents an abuse of discretion. Nothing in the record indicates the amount of those monthly premiums.

¶17  The transcript of the second hearing in this matter shows that Jackie's counsel pointed out to the District Court that, under her proposed findings of fact, she would reimburse Willis for SBP premiums. However, the District Court was not required to adopt that proposed finding, or any other proposed finding submitted by the parties. We note that the court did not adopt all of the proposed findings presented by either party.

¶18  We hold Willis has failed to establish that the District Court abused its discretion by failing to direct Jackie to reimburse Willis for the cost of the survivor benefit plan.

¶19  ***Issue 3. Did the District Court abuse its discretion by its distribution of the marital estate?***

¶20  Under this issue, Willis claims the parties made a pre-hearing agreement on various property division issues which the District Court did not honor. Specifically, Willis claims the parties agreed that the date first set for the dissolution hearing—in December of 2005—would be the cutoff date used in computing Jackie's interest in his retirement benefits. The District Court instead used the May 2006 hearing date. Willis also points out that the court gave Jackie property valued at approximately $9,000 more

6

than the property it ordered distributed to him, which he contends violates the agreement of the parties that the marital estate would be divided equally between them.

¶21    Jackie responds that there was no executed agreement between the parties on these matters. The record supports her position.  Moreover, as a general rule, the value of marital assets should be determined at or near the time of dissolution.  *See In re Marriage of Hochhalter,* 2001 MT 268, ¶ 17, 307 Mont. 261, 37 P.3d 665.  The end date selected by the District Court for computation of the value of Jackie's interest in Willis's future retirement benefits meets that description.  Also, the court was not required to award the parties property of precisely equal value.  *See In re Marriage of Payer*, 2005 MT 89, ¶ 14, 326 Mont. 459, 110 P.3d 460.  We hold Willis has not established that the District Court abused its discretion by its distribution of the marital estate.

¶22    Affirmed.

/S/ JAMES C. NELSON

We concur:

/S/ MIKE McGRATH
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice John Warner concurs.

¶23    I concur with the Court's Opinion.  However, in my view, the Opinion cannot be read to require that a district court must in every instance utilize the formula affirmed in this case when it distributes a retirement plan.  Nor is it required that a district court

7

always divide that portion of a plan which is being distributed equally between the parties. An even distribution is not mandated by § 40-4-202, MCA, which is flexible and vests a good deal of discretion in the district court. As this Court has consistently stated, each case must be looked at individually, with an eye to its unique circumstances. *Marriage of Harris*, 2006 MT 63, ¶ 17, 331 Mont. 368, 132 P.3d 502; *Marriage of Laster*, 197 Mont. 470, 476, 643 P.2d 597, 601 (1982).

/S/ JOHN WARNER